**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**RODERICK PITTMAN,**
        **Petitioner,**

**v.**                                             **Case No. 1:17cv250-MW/CAS**

**STATE OF FLORIDA,**
        **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On or about October 8, 2017, Petitioner Roderick Pittman, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, with attachments.   ECF No. 1.   On June 25, 2018, Respondent filed an answer and exhibits.   ECF No. 15.   Petitioner has filed a reply.   ECF No. 18.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

On November 13, 2013, by amended information filed in Alachua County Circuit Court case number 01-2013-CF-808-A, the State of Florida charged Petitioner Roderick Pittman with four counts in connection with events that occurred on or about February 23, 2013:   (1) attempted sexual battery by use of force likely to cause serious personal injury, contrary to sections 794.011(3) and 777.04, Florida Statutes; (2) attempt to commit robbery while armed with a deadly weapon (a knife), contrary to sections 812.13(2)(a) and 777.04, Florida Statutes; (3) aggravated battery with a deadly weapon (a knife), contrary to sections 775.087 and 812.13(2)(a), Florida Statutes; and (4) aggravated assault with a deadly weapon, contrary to section 784.021, Florida Statutes.   Ex. B1 at 22-23.[1]

Pittman proceeded to a jury trial before Judge Aymer Curtin.   *See* Exs. B1-B7.   Pittman testified during the trial.   Ex. B5 at 269-71, 272-305. On November 20, 2013, the jury returned a verdict finding him guilty, on Count 1, of the lesser included offense of attempt to commit simple battery;

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 15.

Case No. 1:17cv250-MW/CAS

on Count 2, of the lesser included offense of simple assault; guilty as charged on Count 3, specifically finding that he used a deadly weapon; and not guilty on Count 4.   Ex. B1 at 49-52; Ex. B6 at 125-27.   At proceedings held January 22, 2014, Judge Curtin adjudicated Pittman guilty and sentenced him to concurrent terms of sixty (60) days in jail on Counts 1 and 2, with credit for sixty (60) days previously served, and ten (10) years in prison on Count 3, with credit for 280 days previously served, to be followed by five (5) years of probation.   Ex. B1 at 56-69; Ex. B3 at 223-50 (transcript of sentencing).

Pittman appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D14-761.   *See* Exs. B8 (Initial Brief), B9 (Answer Brief).   On March 19, 2015, the First DCA per curiam affirmed the case without a written opinion.   Ex. B10; Pittman v. State, 160 So. 3d 416 (Fla. 1st DCA 2015) (table).

On April 21, 2015, Pittman filed a pro se Motion for Modification/ Mitigation of Sentence.   Ex. E1.   The state trial court summarily denied the motion by order rendered April 30, 2015.   Ex. E2.

On July 23, 2015, Pittman filed a pro se Motion for Postconviction

Relief, raising two ineffective assistance of counsel claims.   Ex. C1 at 1-

36.   He filed two amended motions.   *Id*. at 37-74, 84-121.   He also filed a

motion for appointment of counsel.   The state post-conviction court denied

the appointment of counsel and denied post-conviction relief by order

rendered November 21, 2016.   *Id*. at 173-80 (exclusive of attachments).

Pittman appealed, *id*. at 267-69, and filed an initial brief in case number

1D16-5513, Ex. C2.   The State did not file an answer brief.   Ex. C3.   The

First DCA per curiam affirmed the case without a written opinion on

February 28, 2017.   Ex. C4; Pittman v. State, 230 So. 3d 1170 (Fla. 1st

DCA 2017) (table).   The mandate issued May 1, 2017.   Ex. C7.

As indicated above, Pittman filed a § 2254 petition in this Court on or

about October 8, 2017.   ECF No. 1.   He raises four grounds, including two

claims of ineffective assistance of counsel (IAC):

(1) "The unduly suggestive photo lineup played the most
pertinent role to obtain this conviction."   *Id*. at 5.

(2) IAC:   Trial counsel "failed to object to improper comments
and obvious consideration by the Court during the most
pertinent sentencing proceedings."   *Id*. at 7.

(3) IAC:   Trial counsel "was not prepared for trial as evident on
the face of the record."   *Id*. at 8.

(4)   "Impermissible factors used at sentencing."   *Id*. at 10.

Respondent filed an answer, with exhibits.   ECF No. 15.   Pittman has filed

a reply.   ECF No. 18.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"   Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."   Id.

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.   This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.   Second,
> the defendant must show that the deficient performance
> prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).   To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."   Id. at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."   Id. at 694.   "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome." *Id.*   For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*   It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1:   Photo Lineup

In his first ground, Petitioner Pittman asserts the photo lineup used by law enforcement was "unduly suggestive."   ECF No. 1 at 5.   As Respondent indicates, Pittman did not present this claim in state court; rather, he presented a related claim alleging IAC.   *See* Ex. C1 at 99-107. Accordingly, Pittman has not exhausted this claim.

In his reply, Pittman indicates he presented this claim to the state court "on every available petition."   ECF No. 18 at 2.   Assuming, therefore, that Pittman thus intended to raise here the IAC claim regarding

the photo lineup that he raised in state court, the state post-conviction court

denied that claim, making the following findings:

> As to Ground Two, Defendant alleges that trial counsel was ineffective for failing to move to suppress the unduly suggestive photographic line-up.   Immediately after the incident in this case, law enforcement did a show-up of Defendant to the victim; however, the victim was unable to identify Defendant as her attacker.   *See* Trial Transcript at 64 (lines 15-25) – 65 (lines 1-3).   The victim did, however, subsequently identify Defendant in a photographic line-up as the person who most resembled her attacker.   *Id*. at 67 (lines 1-25) – 69 (lines 1-7).   Defendant argues that his counsel should have suppressed the line-up identification as unduly suggestive because:   (1) the victim had already seen Defendant in a show-up prior to picking him [in] the photographic line-up; and, (2) Officer King purportedly told the victim to pick Defendant.

> "The primary evil to be avoided in the introduction of an out-of-court identification is a very substantial likelihood of misidentification."   Simmons v. State, 934 So. 2d 1100, 1118 (Fla. 2006) (quoting Grant v. State, 390 So. 2d 341, 343 (Fla. 1980); *see also* Neil v. Biggers, 409 U.S. 188 . . . (1972).   In Grant, the Florida Supreme Court held that "a suggestive confrontation procedure, by itself, is not enough to require exclusion of the out-of-court identification; the confrontation evidence will be admissible if, despite its suggestive aspects, the out-of-court identification possesses certain features of reliability."   Simmons, 934 So. 2d at 1118 (citing Grant, 390 So. 2d at 343); *see also* Manson v. Braithwaite, 432 U.S. 98, 110 . . . (1977).   "Therefore, the test for whether a suggestive identification procedure should be excluded has two prongs: (1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; and (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification."   *Id*.

(citing Grant, 390 So. 2d at 343).   Furthermore, "the United States Supreme Court [has] held that the factors a court should consider to determine the likelihood of misidentification include 'the opportunity of the witness to view the person or object at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the person or object, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'"   *Id*. (quoting Neil, 409 U.S. at 199-200, 93 S.Ct. 375).

Here, law enforcement did not use an unnecessarily suggestive procedure in obtaining the victim's out-of-court identification of Defendant via the photographic line-up.

First, the fact that the victim picked Defendant out of a photographic line-up a day[] after seeing him in a live show-up did not render the identification procedure unnecessarily suggestive.   *See* Rimmer v. State, 825 So. 2d 304, 317 (Fla. 2002) ("The fact that [the defendant] was the only person in the physical lineup that had also been in the photo spread does not taint [the victim's] identification because the physical lineup took place . . . two months after the photo spread, and there is no evidence in the record that [the victim] re-viewed the photo spread shortly before viewing the physical lineup.   In fact, Moore testified at the suppression hearing that . . . he made his selection based on the robbery incident and not the prior photo identification.").   During trial, the victim testified that she made her identification based on the person who most resembled the person who attacked her, not the person whom she had previously seen at the show-up.   *See* Trial Transcript at 67 (lines 1-15).

Second, Officer King testified at trial that the victim did not identify Defendant during the live show-up.   *See* Trial Transcript at 106 (lines 9-18), 115 (lines 14-25) – 117 (lines 1-5), 133 (lines 1-25) – 134 (lines 1-12).   However, she did pick Defendant out of a photographic line-up, which was done the

following day.   *Id*. at 108 (lines 18-25) – 110 (lines 1-2).   There is no evidence that Officer King suggested Defendant as the person whom she should pick.

Third, the victim's female friend was unable to identify Defendant in either a live show-up or a photographic line-up as the person whom she saw at the time of the incident.   *Id*. at 218 (lines 6-18), 221 (lines 4-25) – 222 (lines 1-13).   The fact that the victim's friend could not identify Defendant, and identified a third person as the possible suspect in the photographic line-up, supports the finding that the identification procedure used in this case was not unnecessarily suggestive.

Because the identification procedure in this case was not unnecessarily suggestive, counsel did not err by failing to move to suppress the victim's identification of Defendant in the photographic line-up.   However, even if counsel should have moved to suppress the out-of-court identification by the victim, Defendant fails to show any prejudice.   First, the jury was notified of the failed identifications; and, the suggestive nature of the identification by the victim that ultimately took place. *See* Trial Transcript at 64 (lines 15-25) – 65 (lines 1-3), 67 (lines 1-25) – 69 (lines 1-7), 106 (lines 9-18), 108 (lines 18-25) – 110 (lines 1-2), 115 (lines 14-25) – 117 (lines 1-5), 133 (lines 1-25) – 134 (lines 1-12), 218 (lines 6-18), 221 (lines 4-25) – 222 (lines 1-13).   And, counsel made that point to the jury during his closing argument.   *See* Trial Transcript (November 20, 2013) at 28 (lines 5-13), 31 (lines 7-25) – 32 (lines 1-21), 36 (lines 23-25) – 37 (lines 1-16).   Second, DNA evidence (the victim's blood on Defendant's knife) connected Defendant to the charged offenses independent of the victim's identification. *See* Arrest Mittimus at 3[]; Trial Transcript (November 30, 2013) at 7 (lines 19-24), 8 (lines 23-25) – 9 (lines 1-3), 10 (lines 18-24), 64 (lines 21-24).   Third, as the State noted in its closing argument, it would require a series of unlikely coincidences for Defendant not to be the perpetrator in this case.   *See* Trial Transcript (November 30, 2013) at 65 (lines 2-25) – 68 (lines 1-14).   For the foregoing reasons, Defendant fails to show either

error by counsel or prejudice.   Accordingly, the claim raised is
without merit.

Ex. C1 at 176-80 (footnotes omitted).   On appeal, the First DCA affirmed

without a written opinion.   The state court's ruling is entitled to deference

and review is limited to the record before the state court.   *See* 28 U.S.C.

§ 2254(d); <u>Cullen</u>, 563 U.S. at 187-88; <u>Richter</u>, 562 U.S. at 99-103; <u>Wright</u>,

278 F.3d at 1255.

   "To violate due process, an identification procedure used by the

police must be unnecessarily suggestive and create a substantial risk of

misidentification." <u>Johnson v. Dugger</u>, 817 F.2d 726, 729 (11th Cir.1987)

(citing <u>Neil v. Biggers</u>, 409 U.S. 188 (1972)).   "Factors considered in

determining reliability include 'the opportunity to view the witness at the

time of the crime, the witness' degree of attention, the accuracy of the

witness' prior description of the criminal, the level of certainty demonstrated

by the witness at the confrontation, and the length of time between the

crime and the confrontation.'"   *Id.* (quoting <u>Neil</u>, 409 U.S. at 199).

   The record supports the post-conviction court's findings.   In

particular, the victim testified at trial and described the attack as well as her

resulting injuries, including a chipped tooth and cuts from the attacker's

knife.   Ex. B4 at 48-64; *see* analysis of Grounds 2 and 4, *infra*.   She

testified the attack lasted about "[f]ive minutes maybe," or "[f]ive to ten

minutes" in total, and she was facing the attacker for "[a] couple of

seconds."   Ex. B4 at 64.   She had never seen him before.   *Id*.   She

described the attacker as "[a]round 25," an African American with "[l]ike

light" skin, wearing a "black do-rag on his head, a black shirt, jeans and

closed toed shoes."   *Id*. at 65.   She testified he was about "5'8", 5'9."   *Id*.

at 66.   She described the knife as a silver, folding knife.   *Id*.   She testified

that, after the incident, she gave a description of the attacker and the knife

he had used.   *Id*. at 65-66.   She testified that the police took her back to

the apartment complex where the attack occurred and showed her a

person, asked her if she could tell if that person was the attacker, and she

could not identify him as such.   *Id*. at 64-65.   She testified that the police

later showed her a photo line-up and asked her to "[p]ick someone that

most resembles the individual from that night," which she did.   *Id*. at 67.

She confirmed that she picked the photo "[b]ased on the person that had

attacked" her, not based on the person they brought to the show-up.   *Id*.

Defense counsel cross-examined her, confirming that she had not

seen Pittman before the attack.   *Id*. at 69-70.   Defense counsel asked

about the lighting, indicating "they had overhead lights on and he was

illuminated so that [the victim] could see him well" and she answered,

"Yes."   *Id*. at 71.   Defense counsel also questioned the victim, confirming

that she did not identify him in the show-up after the attack:

> Q.   Before they brought you [for the show-up], you had not
> seen him before, correct?
>
> A.   Before the showup or – before that night or in general?
>
> Q.   In general.
>
> A.   No.
>
> Q.   And as a matter of fact, when they asked you whether or
> not that was the individual you said you didn't believe it was,
> isn't that correct?
>
> A.   Yes.

*Id*. at 70.

Similarly, Officer Chris King testified that he brought the victim

to the show-up and the victim was unable to identify Pittman.   *Id*. at

106, 115-17, 133-34.   King testified that he showed the photo lineup

to the victim the day after the attack, and the victim identified

Pittman's photo as the one most resembling her attacker.   *Id*. at 108-

09.

Thus, as the state post-conviction court found, no evidence indicates

law enforcement suggested Pittman's photo as the one the victim should

pick.   Further, the record supports the court's determination the photo line-up was not unnecessarily suggestive.   The photo line-up was admitted into evidence as State's Exhibit No. 11, and it includes six similar photos of black males, all appearing with some facial hair and about the same age. *See* B4 at 68; Ex. B7.   As Respondent points out, the line-up is not impermissibly suggestive just because the victim did not identify Pittman at the show-up a day earlier.   *See, e.g.*, Williams v. Sec'y Fla. Dep't of Corr., No. 8:10cv2761-T-27TGW, 2014 WL 61807 at *5 (M.D. Fla. Jan. 7, 2014) (concluding photo lineup and trial court identifications of Petitioner were reliable, and explaining, "Although [the victim] had a chance to observe Petitioner at the show-up but could not identify him, this did not render the photographic lineup impermissibly suggestive or result in a substantial risk of misidentification given the totality of the circumstances.").

The state court also found that even if the identification procedure was unnecessarily suggestive, Pittman did not show prejudice resulting from any failure of defense counsel to challenge the procedure.   As the court explained, and as set forth in part above, the jury was informed of the failed show-up.   Defense counsel pointed this out during cross and during closing argument.   Ex. B4 at 70; Ex. B6 at 27-28, 31-32, 36-37.

Moreover, law enforcement apprehended Pittman shortly after the attack, on the grounds of the apartment complex where the attack occurred, and they found a blood-stained, folded knife in his possession. Ex. B4 at 85-94.   Pittman lived in a nearby apartment complex.   Ex. B5 at 276-77.   DNA evidence, specifically from the victim's blood found on Pittman's knife blade, connected Pittman to the incident independent of any identification.   Ex. B5 at 238, 250, 264-66.

Petitioner Pittman has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 2:   IAC – Comments at Sentencing
### &
### Ground 4:   Factors Used at Sentencing

In his second ground, Petitioner Pittman asserts that defense counsel provided ineffective assistance by not objecting to "improper comments and obvious consideration by the Court during the most pertinent sentencing proceedings."   ECF No. 1 at 7.   Pittman specifically references "comments on the [Petitioner's] motive and intentions on the night of the

incident." *Id*.   In the fourth ground, Pittman asserts the trial court

considered "impermissible factors" at sentencing.   ECF No. 1 at 10.

Pittman raised these related claims in state court on direct appeal, Ex. B8

at i, 1`9-25, and as the first claim in his postconviction motion, Ex. C1 at 87-

99.

The state post-conviction court denied the claim, making the following

findings:

> As to Ground One, Defendant alleges that trial counsel
> was ineffective for failing to object to improper comments and
> considerations by the court during sentencing.   During
> sentencing, the court indicated its belief, based on the victim's
> testimony at trial, that Defendant intended to commit a sexual
> battery on the victim.   *See* Disposition Transcript at 20 (lines
> 17-25) – 21 (lines 1-21), 23 (lines 1-7), 24 (lines 18-25) – 25
> (lines 1-22); *see also* Trial Transcript at 49 (lines 13-25) – 50
> (lines 1-6), 72 (lines 24-25) – 76 (lines 1-12).   Defendant
> contends that the court impermissibly relief [sic] upon acquitted
> conduct in imposing its sentence of 10 years imprisonment
> followed by 5 years probation on the Aggravated Battery with a
> Deadly Weapon conviction.
>
> "[A] jury acquittal is not a rejection of facts but is an
> acknowledgement that the prosecution did not prove an
> essential element of the offense beyond a reasonable doubt."
> Nusspickel v. State, 966 So. 2d 441, 445 (Fla. 2d DCA 2007)
> (citing Harris v. State, 959 So. 2d 794, 799 (Fla. 2d DCA 2007)
> (Canady, J., concurring).   Thus, "a jury's verdict of acquittal
> does not prevent the sentencing court from considering conduct
> underlying the acquitted charge, so long as that conduct has
> been proved by a preponderance of the evidence."   United
> States v. Watts, 519 U.S. 148, 157 . . . (1997).   The only

exception being that the imposed sentence cannot be above the statutory maximum.   Nusspickel v. State, 966 So. 2d at 445 ("[T]he holding in Watts has been limited by more recent Sixth Amendment decisions in the context of sentences that increase the penalty for a crime beyond the statutory maximum.") (citing Harris, 959 So. 2d at 800).

Here, the court imposed a sentence below the statutory maximum of 15 years for Aggravated Battery with a Deadly Weapon, which is a second-degree felony.   *See* § 784.045(2), Fla. Stat. (2012); *see also* § 775.082(3)(c), Fla. Stat. (2012). Furthermore, the court properly considered conduct for which the jury found Defendant guilty, which was, at a minimum, directing her to bend over and lifting up her dress.   *See* Amended Information; Verdict; *see also* Trial Transcript at 49 (lines 13-25) – 50 (lines 1-6), 72 (lines 24-25) – 76 (lines 1-12). To the extent that the court opined that committing a sexual battery seemed to be Defendant's motivation at the time of the [sic] Aggravated Battery occurred, there were certainly facts in the record, proven by a preponderance of the evidence, supporting that conclusion.   *See* Disposition Transcript at 20 (lines 17-25) – 21 (lines 1-21), 23 (lines 1-7), 24 (lines 18-25) – 25 (lines 1-22); *see also* Trial Transcript at 49 (lines 13-25) – 50 (lines 1-6), 72 (lines 24-25) – 76 (lines 1-12).   Thus, the court did not improperly consider conduct for which Defendant had been acquitted.   Furthermore, the court considered the mitigation evidence put on by the defense.   *See* Disposition Transcript at 20 (lines 1-25) – 25 (lines 1-22).   For these reasons, Defendant fails to show either error by counsel or prejudice.   Accordingly, the claim raised is without merit.

Ex. C1 at 175-76.   On appeal, the First DCA affirmed without a written

opinion.   Ex. C4.   Likewise, in the direct appeal, the First DCA had

affirmed without a written opinion.   Ex. B10.   The state court rulings are

entitled to deference and review is limited to the record before the state

court.    *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 563 U.S. at 187-88; <u>Richter</u>, 562

U.S. at 99-103; <u>Wright</u>, 278 F.3d at 1255.

The record supports the state court rulings.   As the state post-

conviction court explained, just before sentencing Pittman, the trial court

judge made statements, based on the victim's trial testimony, suggesting

that Pittman intended to commit a sexual battery and "but for [the victim's]

bravery it would have happened."   Ex. B3 at 243.   He also stated he did

not "disagree with the verdict of this jury."    *Id*.   He stated, "I hope this is an

isolated incident.   I hope that he hasn't done this to other people and

gotten away with it, and we'll never know that."    *Id*.   He then imposed the

sentence:

> Saying nothing sufficient, it's the judgment and sentence
> of the Court as to the two misdemeanor counts in this case, he
> is adjudicated guilty and sentenced to – I believe the first count,
> attempt to commit simple battery would be a second-degree
> misdemeanor, heis sentenced to 60 days in the Department of
> the Jail, given 60 days credit for the time he's already served,
> and that count is done and over with and dealt with.
>
> As to the simple assault, that's a first-degree
> misdemeanor, he's adjudicated guilty on that, sentenced to
> concurrent 364 days Department of the Jail and given credit for
> the 364 days – no strike that.   He's given 280 days credit.   For
> the 280 days – it's a 280 day sentence.   I'm sorry, madam
> clerk.   I don't – you know, I don't want to – that's to serve –
> serve concurrently.

As to the aggravated battery with a deadly weapon, I'm going to adjudicate him guilty and sentence him to 10 years in the Department of Corrections to be followed by five years of probation.

And I'm going to tell you something, Mr. Pittman, I was inclined to give you the 15 years that they're asking for.   The only reason I'm not giving you that is because of your family support and your uncle.   I'm – you're going to get 280 days credit, you'll get gain time, and, hopefully, you will somehow come to your senses while you're in there.   You were not raised this way.   That wasn't the values instilled.   I have no idea why you attempted to do this, but had you completed what you wanted to do and had I been the Judge and had you been convicted of sexual battery I would have given you the maximum sentence allowed by law.   I want you to understand that.   So what your attorney and your family had to say did save you five additional years in the Department of Corrections.

*Id*. at 243-45.

Pittman takes issue with the sentencing judge, who also served as

the trial judge in this case, referencing conduct for which he was not

convicted, attempted sexual battery; rather, on Count 1, he was convicted

of a lesser included offense of attempted simple battery.   As the state

court and Respondent indicate, however, the U.S. Supreme Court has held

that "a jury's verdict of acquittal does not prevent the sentencing court from

considering conduct underlying the acquitted charge, so long as that

conduct has been proved by a preponderance of the evidence."   United

States v. Watts, 519 U.S. 148, 157 (1997).

Here, the trial transcript reflects the victim testified that, as she walked down a hallway toward a stairwell in the apartment complex, an individual put his arm around her neck and he had a knife in his hand.   Ex. B4 at 48.   She testified, "He threatened to cut my neck if I screamed and then he asked for my belongings."   *Id*.   He held the knife by her neck.   *Id*. at 49.   She told him she did not have anything except her phone and keys, and he then asked her "to walk toward the stairs and put [her] hands on the steps so [she] was bent over," and she complied.   *Id*.   She testified, "He started pulling my dress up.   And then I had a body conformer, like Spanx on underneath, and he went for the waistband and that's when I reacted."   *Id*.   She "thrust [her] bodyweight back towards him" and "he was pinned against that wall."   *Id*. at 50.   She testified she "was trying to keep the knife away from [her] throat and he was trying to cover [her] mouth from screaming."   *Id*.   "[H]is hand came and hit [her] in the mouth and chipped [her] tooth."   *Id*. at 51.   She dropped her cellphone and "continued to scream and then somehow [she] got away and [she] started running."   *Id*. She also sustained a cut on her finger as a result of the attack.   *Id*. at 50.

Given the victim's testimony, and the presence of the victim's blood on Pittman's knife, the judge could reasonably conclude that a

preponderance of the evidence showed Pittman attempted to sexually assault the victim.   Nothing indicates that an objection by defense counsel to the judge's comments would have changed the result.   Indeed, defense counsel did object to the scoring of the victim's injury as "moderate," arguing the more appropriate scoring would be "slight"; however, the judge rejected that argument.   Ex. B3 at 224-25.   Defense counsel also argued for a downward departure of probation based on the identification issue, Pittman's loved ones, and Pittman's educational accomplishments.   *Id*. at 237-41.

Further, as the state post-conviction court found, the sentence the judge imposed did not exceed the statutory maximum.   As the court explained, the statutory maximum for aggravated battery with a deadly weapon, which is a second degree felony, is fifteen (15) years.   *See* §§ 775.082(3)(c), 784.045(2), Fla. Stat. (2012).   As the state post-conviction court found, the sentencing court favorably considered testimony and evidence presented by the defense at sentencing.   *See* Ex. B3 at 228-37 (testimony by Pittman's fiancé, his classmate, and his uncle).

Based on the foregoing, Petitioner Pittman has not shown that the state courts' rejection of these claims involved an unreasonable application

of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, these grounds should be denied.

### Ground 3:   IAC – Trial Preparation

In his third ground, Petitioner Pittman asserts that defense counsel provided ineffective assistance by not adequately preparing for trial.   ECF No. 1 at 8.   As Respondent asserts, Pittman did not present this ground in state court and, therefore, it is not exhausted and is now procedurally defaulted.   ECF No. 15 at 36-37.   *See* O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("[I]f state court remedies are no longer available, . . . those remedies are technically exhausted, . . . but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court; instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.").   *See also, e.g.*, McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir.2005) (explaining exhaustion requirement: "[T]o ensure that state courts have the

first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir.2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable.").

Pittman has not alleged cause or prejudice for this default, and he did not address this in his reply.   *See* ECF No. 18.   This ground should be denied.

## Conclusion

Petitioner Roderick Pittman is not entitled to federal habeas relief. The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma

pauperis be **DENIED**.

     **IN CHAMBERS** at Tallahassee, Florida, on December 7, 2018.

           **S/ Charles A. Stampelos**
           **CHARLES A. STAMPELOS**
           **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

     **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**